UNITED STATES DISTRICT CIOURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE MELVIN,                                   Case No. 18-13405

       Plaintiff                              District Judge Stephen J. Murphy, III
v.                                             Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff Dale Melvin ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI respectively of the Social Security Act.  The parties have filed cross-motions for summary judgement which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #19] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

## I.  PROCEDURAL HISTORY

On March 30, 2017, Plaintiff filed applications for DIB and SSI, alleging disability as of February 15, 2015 (Tr. 146, 153).  Upon initial denial of the claim, Plaintiff

requested an administrative hearing, held on June 13, 2018 in Detroit, Michigan (Tr. 37).

Administrative Law Judge ("ALJ") Therese Tobin presided.   Plaintiff, represented by

attorney Grace Flash, testified (Tr. 40-56), as did Vocational Expert ("VE") Diane Regan

(Tr. 56-61).   On July 25, 2018, ALJ Tobin determined that Plaintiff was not disabled (Tr.

23-32).   On October 23, 2018, the Appeals Council denied review of the administrative

decision (Tr. 1-3).   Plaintiff filed suit in this Court on October 31, 2018.

## II.   BACKGROUND FACTS

Plaintiff, born September 4, 1966, was 51 at the time of the   administrative

decision (Tr. 32, 146).   He completed high school and received a certification for heating

and cooling work (Tr. 175).   He worked previously as a maintenance worker at a car

wash, material handler, and tire changer (Tr. 175).   He alleges disability due to back,

neck, and breathing problems and coronary disease (Tr. 174).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony.

After developing back pain, he had been diagnosed with degenerative disc disease

(Tr. 43).   His ability to bend, walk, stand, and recline for long periods was limited (Tr.

43).   He reclined two to three times a day (Tr. 43).   Pain medication helped the back

condition "a little" (Tr. 44).   He had declined to undergo back surgery after being told

that the proposed surgery could result in the inability to walk (Tr. 44).   His cardiac

symptoms were limited to shortness of breath "once in a while" (Tr. 44).   The condition

of hypertension was controlled with medication (Tr. 45-46).   Plaintiff was currently living

in his truck  (Tr. 44).  He spent most of his waking hours looking at Facebook or the internet on his smart phone (Tr. 45).  He did not experience problems driving (Tr. 45).

In response to questioning by his attorney, Plaintiff reported that he stood 5' 9" and weighed around 240 pounds (Tr. 46).  His medical conditions affected his ability to exercise (Tr. 47).  His previously held Commercial Driver's License had not been reinstated due to his use of prescribed narcotics but he had a chauffeur's license (Tr. 47). He was unable to drive for more than 15 minutes due to the inability to sit for extended periods (Tr. 47).  He denied medication side effects (Tr. 47).  He experienced delay and difficulty grooming himself and caring for his living area due to standing, twisting, and bending limitations (Tr. 47-48).  On a scale of one to ten, he regularly experienced level "six" to "eight" pain and on a "good" day, "three" to "five" pain (Tr. 48-49).  He was able to stand for up to 15 minutes after which time he was required to sit for 15 minutes (Tr. 50).  He could walk for two blocks before experiencing severe lower back pain (Tr. 51). Due to body pain, he was unable to concentrate on the plot of a movie for more than 15 minutes (Tr. 50).  He was able to lift and carry up to 15 pounds (Tr. 51-52).  However, he experienced intermittent numbness of the arms and hands lasting up to six to eight hours at a time (Tr. 52).

Due to the inability to sleep for more than four hours a night, Plaintiff took several 15-minute naps during the day (Tr. 53).  He did not use an assistive device but leaned against his truck when entering or exiting (Tr. 54).  He experienced pain upon overhead reaching (Tr. 55).  He did not use alcohol or illicit drugs but smoked up to a pack of cigarettes each day (Tr. 56).

### B. Medical Records

### 1. Records Related to Plaintiff's Treatment

February, 2014 records by internist Charbal Bazo, M.D. note that Plaintiff underwent a laparoscopic gallbladder removal the same month (Tr. 336). The same month, Plaintiff was diagnosed with moderate sleep apnea (Tr. 317-318). November, 2014 imaging studies of the lumbar spine showed degenerative disc disease (Tr. 327). Ophthalmological records from November, 2014 note a diagnosis of narrow angle glaucoma (Tr. 341). The same month, imaging studies of the lumbar spine showed degenerative disc disease (Tr. 458).

In February, 2015, Plaintiff reported mild vision blurriness (Tr. 349). Cardiology records note shortness of breath on exertion and edema of the lower extremities (Tr. 412). An echocardiogram showed mild mitral regurgitation (Tr. 426). A cardiac stress test yielded normal results (Tr. 428). Cardiology records from the same month note chest pain and hypertension (Tr. 409). A May, 2015 MRI of the lumbar spine showed a broad central disc bulge and stenosis at L4-L5 and L5-S1 (Tr. 315, 459). In August, 2015, Plaintiff showed a reduction in sleep apnea symptoms with a CPAP machine (Tr. 461). He denied daytime sleepiness (Tr. 463). Imaging studies of the spine from the same month showed only mild degenerative changes (Tr. 466). An October, 2015 MRI of the lumbar spine showed degenerative disc disease at L4-L5 and L5-S1 with mild canal compromise at L2-L3 (Tr. 255, 309). In March, 2016, Plaintiff sought treatment for upper and lower back pain and hand numbness (Tr. 231). Plaintiff reported no benefit from steroid injections (Tr. 233). Physiologist Nick Reina, M.D. noted a stiff gait (Tr.

232).  He prescribed Norco and advised the use of a TENS unit, physical therapy, the possible use of a back brace, and better posture (Tr. 233).  Cardiology records from the same month noted shortness of breath on exertion and edema (Tr. 403).  The following month, Plaintiff reported good results from the use of Norco and that his symptoms were "controlled" (Tr. 237, 239).  Dr. Reina noted that a recent MRI of the cervical spine showed "cord contact" with mild to moderate stenosis at C4-C5 (Tr. 241, 251).   The MRI showed prior fusion surgery at C5-C6 (Tr. 252).  Plaintiff continued to exhibit an antalgic gait (Tr. 241).  September, 2015 records note edema and mild to moderate shortness of breath on exertion (Tr. 406).

July, 2016 imaging studies showing evidence of cervical spine fusion surgery were negative for complications (Tr. 440).  September, 2016 records were negative for chest pain, edema, or shortness of breath (Tr. 400).  In December, 2016, Plaintiff reported left hip pain, noting that he had undergone reconstructive surgery of the left hip in 1990 (Tr. 473).  An x-ray of the hip showed "complete loss of joint space with severe osteoarthritis" (Tr. 301, 477).   The same month and in January, 2017, Plaintiff underwent laser surgery for a longstanding eye condition (Tr. 360).

March, 2017 cardiology records note Plaintiff's report of shortness of breath on exertion and mild lower extremity edema but denial of chest pain (Tr. 222, 224).  The notes state that Plaintiff was not compliant with reducing salt intake and continued to smoke (Tr. 222, 396).  He did not show symptoms of valvular heart disease (Tr. 226).  Plaintiff was advised to lose weight, quit smoking, and reduce his salt intake (Tr. 224).  Dr. Reina's May, 2017 records note that Plaintiff reported ongoing, severe, upper and

lower back symptoms with numbness in the upper extremities (Tr. 247). A chest x-ray from the following month was unremarkable (Tr. 297). June, 2017 records note a normal range of motion but lower extremity edema (Tr. 481). Ultrasound testing was negative for deep vein thrombosis (Tr. 487). A chest x-ray was unremarkable (Tr. 488).

Plaintiff reported worsening neck pain in July, 2017 (Tr. 245). In August, 2017, Dr. Reina completed an assessment of Plaintiff's physical abilities (Tr. 259-262), finding that pain and stress would interfere with his work activities on a "constant" basis (Tr. 259). Dr. Reina found that Plaintiff was unable to walk on rough or uneven ground and was unable to walk more than one block on a normal surface without severe pain (Tr. 259). He found that Plaintiff was unable to climb steps and experienced difficulty stooping, crouching, and bending (Tr. 260). He found that Plaintiff was unable to sit, stand, or walk for more than 30 minutes at a time (Tr. 260). He found that Plaintiff was limited to sitting for around three hours in an eight-hour workday and likewise, was limited to standing or walking for three hours (Tr. 261). He found that Plaintiff required five minute breaks every hour or 30 minutes (Tr. 261). He found that Plaintiff did not require the use of an assistive device (Tr. 261). He found that Plaintiff was limited to lifting five pounds frequently, 10 pounds occasionally, and 15 to 20 pounds rarely (Tr. 261). He found that Plaintiff would be unable to push or pull with any extremities for six or more hours in an eight-hour workday (Tr. 262). He found that Plaintiff would be off task more than 30 percent of the workday; would be more than 50 percent less productive than an average worker; and would miss five or more days of work each month (Tr. 262). Dr. Reina noted that his findings were based on Plaintiff's medical records, physical

examinations, office notes, and imaging studies (Tr. 262). Dr. Reina noted that his assessment was prepared with Plaintiff's assistance (Tr. 265).

Dr. Reina's treating records from the same day note Plaintiff's report of numbness and consistently moderate pain (Tr. 263). Plaintiff exhibited normal respiratory function and no edema (Tr. 264). An echocardiogram from the same month showed a mildly dilated left ventricle but no other abnormalities (Tr. 290, 424). Ophthalmological records from the following month note a diagnosis of moderate bilateral narrow angle glaucoma (Tr. 288). The same month, Plaintiff exhibited edema and reported shortness of breath on exertion (Tr. 392). The following month, Plaintiff sought emergency treatment after experiencing dizziness arising from a sitting position (Tr. 494). He denied chest pain and demonstrated a full range of motion (Tr. 494, 496).

Dr. Reina's February, 2018 records note no significant changes in neck and lower back pain (Tr. 267). Dr. Bazo's records from the same month note a diagnosis of unspecified Carpal Tunnel Syndrome ("CTS") (Tr. 275). March, 2018 records note Plaintiff's report of occasional, mild blurred vision (Tr. 379). He denied heart-related symptoms (Tr. 380). March, 2018 cardiology records note no symptoms and that the edema had resolved (Tr. 384). The same month, E. Neil Pasia, D.O. found that Plaintiff was not a back surgery candidate (Tr. 433). She observed full muscle strength in all extremities and a normal gait (Tr. 432). She advised Plaintiff to exercise and maintain normal activity (Tr. 433).

## 2. Non-Treating Records

In July, 2017, Natalie Gray, M.D. performed a non-examining assessment of the treating records on behalf of the SSA, finding that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk for a total of six hours in an eight-hour workday; and push and pull without limitation (Tr. 69). Dr. Gray found that Plaintiff was limited to frequent (as opposed to constant) balancing, stooping, kneeling, crouching, crawling and climbing of ramps and stairs with a preclusion on all climbing of ladders, ropes, and scaffolds (Tr. 70). She found that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights (Tr. 71).

## C. Vocational Testimony

VE Regan classified Plaintiff's past work as a tire changer as semiskilled and exertionally heavy (exertionally medium as performed); maintenance mechanic, skilled/medium; and press operator, unskilled/medium[1] (Tr. 57).

ALJ Tobin then posed a set of work-related limitations to the VE, describing an individual of Plaintiff's age, education level, and work history:

> [L]ight exertional level with the following limitations: frequently climb
> ramps and stairs; never climb ladders, ropes, and scaffolds; frequently

---

[1]        20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

balance and stoop; frequently kneel, crouch, and crawl; never exposed to unprotected heights and dangerous machinery (Tr. 57).

The VE testified that the above limitations would preclude all of Plaintiff's past relevant work but would allow for the light, unskilled work of an assembler (200,000 positions in the national economy); inspector (100,000); and packer (200,000) (Tr. 58). The VE testified that the inclusion of a sit/stand option allowing the individual to change position every 20 minutes (if needed) and a limitation to fingering and handling frequently would halve the job numbers (Tr. 58). She testified that the above restrictions would also allow for the sedentary work of an inspector (50,000); sorter (50,000); and assembler (100,000) (Tr. 59). The VE testified further that additional limitations to "simple, routine tasks," "simple work-related decisions," and only "frequent contact with supervisors, coworkers, and the general public" would not change the job numbers (Tr. 59).

The VE testified that if the hypothetical individual lacked the persistence, pace or concentration to perform full-time, simple work; were off-task for at least 20 percent of the workday; or, were absent three or more days a month, no competitive employment would be available (Tr. 59). The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") except for her testimony regarding absenteeism, time off tasks, and the sit/stand option which was based on her own professional experience (Tr. 58-60).

In response to questioning by Plaintiff's attorney, the VE testified that a limitation to occasional interaction with supervisors, coworkers, or the public would not change the job numbers but testified that if the hypothetical individual were limited to only

occasional handling and fingering, all of the above-cited jobs would be eliminated (Tr. 60-61).

### D.  The ALJ's Determination

Citing the medical transcript, ALJ Tobin found that Plaintiff experienced the severe impairments of "degenerative disc disease of the cervical and lumbar spine, cardiomyopathy, obesity, glaucoma, chronic pain syndrome, and osteoarthrosis" but that none of the impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25-26).   The ALJ determined that Plaintiff had a Residual Functional Capacity ("RFC") for exertionally light work with the following additional restrictions:

> [F]requent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; no exposure to unprotected heights or dangerous machinery; requires a sit/stand option, permitting change in position every 20 minutes, as needed, without disturbing the workplace; and frequent handling and fingering bilaterally (Tr. 27).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform his past relevant work, he could perform the light, unskilled work of an assembler, inspector, and packer (Tr. 30-31, 58).

The ALJ declined to credit Plaintiff's allegations of disabling limitation, citing April, 2016 records noting no manifestations of congestive heart failure (Tr. 28).   She noted that as of March, 2018, Plaintiff did not experience chest pain or edema (Tr. 29). The ALJ noted Plaintiff's report of mild-to-moderate shortness of breath on exertion but noted that Plaintiff nonetheless continued to smoke a pack of cigarettes every day (Tr.

29).  She cited July, 2016 records showing that Plaintiff's condition was stable following cervical spine surgery (Tr. 28).  The ALJ accorded "little weight" to Dr. Reina's August, 2017 opinion that Plaintiff was incapable of even sedentary work, noting that the assessment contradicted Dr. Reina's own treating records showing full motor strength and an adequate range of cervical spine motion (Tr. 29).  She noted that the assessment appeared to be based on Plaintiff's "subjective complaints" rather than the  objective evidence (Tr. 29-30).

### III.    STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir.   1986)(*en banc*).   Where

substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).   However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that,

"notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff makes four arguments for remand, contending first that the ALJ failed to provide an adequate rationale for discounting Dr. Reina's August, 2017 treating assessment.  Next, he argues that substantial evidence does not support the RFC for exertionally light work.  In his third argument, he contends that the ALJ failed to consider his efforts to obtain pain relief in rejecting the allegations of limitation.  Last, he disputes the finding that he did not seek regular medical treatment and, to the extent that he did not always receive regular treatment, the ALJ failed to consider the reasons that his medical care was compromised .

Plaintiff's first and second arguments will be discussed separately.  His third and fourth arguments, both pertaining to the ALJ's rejection of the professed limitation can be considered in tandem.

### A.  Dr. Reina's Assessment

Plaintiff argues first that the ALJ "failed to provide any legitimate reasons" for discounting Dr. Reina's treating opinion as required by 20 C.F.R. §§ 404.1527, 416.927 and SSR 96–2p, 1996 WL 374188, at *5 (1996)).  ECF No. 13, PageID.561.  He also contends that Dr. Reina's treating assessment is entitled to controlling weight.  *Id.* Plaintiff relies on an inapplicable Social Security Ruling and regulations in support of his

argument.  For claims filed before March 27, 2017, the opinion of a treating physician is accorded controlling weight if  "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and  "not inconsistent with the other substantial evidence."  *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) 20 C.F.R. § 404.1527(c)(2)); SSR 96–2p, 1996 WL 374188, at *5 (1996)).

However, the administration rescinded SSR 96-2p on March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 27, 2017).  Plaintiff filed his application for benefits on March 30, 2017 (Tr. 146).  In contrast to previously applied regulations, *see* §§ 404.1527, 416.927, the ALJ will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").   The factors to be considered in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion. §§ 404.1520c(c); 416.920c(c).   ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to[] explain" the consideration given to the remaining factors. §§ 404.1520c(b); 416.920c(b).

The Plaintiff did not present any arguments under the new regulation until oral argument, and has arguably waived this issue. Nevertheless, the ALJ's discussion and accord of little weight to Dr. Reina's opinion satisfies the requirements of the above regulations. The ALJ acknowledged Dr. Reina's opinion that Plaintiff was incapable of sitting or standing/walking for more than three hours in an eight-hour workday; lifting more than 10 pounds; and working without excessive breaks or absenteeism (Tr. 29 *citing* Tr. 259-262). However, she noted that Dr. Reina's assessment was inconsistent with Dr. Pasia's March, 2018 findings of no cervical or lumbar tenderness; an adequate range of cervical motion; and full motor strength in a extremities (Tr. 29 *citing* Tr. 433). The ALJ cited Dr. Reina's statement that his assessment was made with Plaintiff's assistance, noting that the assessment appeared to be based on Plaintiff's "subjective complaints" rather than the clinical or objective evidence (Tr. 29-30 *citing* Tr. 265).

In contrast, the ALJ accorded "great weight" to Dr. Gray's July, 2017 non-examining finding that Plaintiff could perform a limited range of exertionally light work because "it was supported by the evidence in the record as a whole," noting that despite the presence of degenerative disc disease, Plaintiff demonstrated a full range of motion other than a decreased range of the lumbar spine (Tr. 30). She cited Plaintiff's testimony that he did not experience significant limitation due to glaucoma or cardiomyopathy (Tr. 30). Although Dr. Gray's assessment did not address the need for position changes, the ALJ found that due to obesity, degenerative disc disease, and hip problems, Plaintiff would require a "sit/stand" option allowing him to change from a sitting to standing

position every 20 minutes (Tr. 30).  Because the ALJ discussed the "supportability" and "consistency" of both Dr. Reina's and Dr. Gray's assessment as required by § 404.1520c and § 416.920c, a remand is not warranted.

### B.  The RFC Assessment

In his second argument, Plaintiff contends that the RFC for a range of light work is contradicted by "overwhelming evidence" of record.  ECF No. 13, PageID.564.  Citing SSR 83-10, he notes that light work, by definition, involves "'a good deal of walking or standing.'" *Id.* at PageID.565 (*citing*  1983 WL 31251, at *5 (January 1, 1983)).

"RFC is what an individual can still do despite his or her limitations."  SSR 96-8p, 1996 WL 374184 at *2. (July 2, 1996).  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including objective findings, non-medical evidence, and activities of daily living. *Id.* at *7.   In crafting the RFC, the ALJ's findings must include consideration of the exertional activities of "sitting, standing, walking, lifting, carrying, pushing, [and] pulling" as well as the non-exertional physical limitations. SSR 96-8p at *6.  "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Delgado v.Comm'r Social Security*, 30 Fed.Appx. 542, 547–548, 2002 WL 343402, at *5 (6th Cir. March 4, 2002)(internal citations omitted."[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.*

Contrary to Plaintiff's claim, the RFC for a reduced range of exertionally light work with a sit/stand option is well explained and generously supported by the record. The ALJ found that the condition of cardiomyopathy did not prevent Plaintiff from performing light work, citing a stress test taken five days after the alleged onset of disability showing normal results (Tr. 28).  The ALJ cited Plaintiff's April, 2016 report to Dr. Reina that he had not experienced heart-related symptoms since his last visit (Tr. 28). The ALJ also noted that despite Plaintiff's report of shortness of breath on exertion, he continued to smoke a pack of cigarettes each day (Tr. 29). The Sixth Circuit has repeatedly held that a claimant's continued smoking militates against the credibility of [a claimant's] disabling breathing [dis]order." *Siler v. Astrue*, 2012 WL 2603656, at *7 (E.D. Ky. July 5, 2012)(*citing Brown v. Secretary of Social Sec.*, 221 F.3d 1333, at *1 (6th Cir. June 22, 2000)(table)); *See also Sias v. Secretary of Health and Human Svcs.*, 861 F.2d 475, 480 (6th Cir. 1988)(allegations of disability undermined by failure to follow the prescribed medical regime).   As to the condition of degenerative disc disease, the ALJ noted that an April, 2016 MRI of the cervical spine was similar to an earlier study (Tr. 28).  The ALJ cited Dr. Reina's July, 2016 observation that the chronic pain syndrome was stable and Dr. Reina's May, 2017 finding of normal strength, the ability to heel/toe walk, and negative neurologic testing of the lower extremities (Tr. 28).

Standing alone, Dr. Gray's non-examining finding that Plaintiff could perform a range of light work constitutes substantial evidence in support of the RFC (Tr. 30). However in addition, the ALJ added a sit/stand option to the RFC allowing Plaintiff to

change positions every 20 minutes in recognition of the conditions of obesity, lumbar degenerative disc disease, and osteoarthritis of the left hip (Tr. 30). She acknowledged the findings of intermittent numbness due to cervical degenerative disc disease by limiting him to work involving frequent, rather than constant, handling and fingering (Tr. 27, 30). In short, although substantial evidence supported a less restrictive RFC, the ALJ permissibly found that Plaintiff was limited to a narrower range of light work than reflected in Dr. Gray's assessment.

Further, while Plaintiff notes that under SSR 83-10, light work requires standing or walking around six hours in an eight-hour workday, the Ruling also notes that the standing/walking is required "on and off" rather than continually. 1983 WL 31251, at *5. The inclusion of the sit/stand option in the RFC further limits Plaintiff to standing or walking for 20 minutes at a time. Notably, Plaintiff does not contest the VE's finding that the RFC for light work with the sit/stand option and the additional postural and manipulative limitations would allow for approximately 250,000 jobs in the national economy (Tr. 57-58). By any standard, 250,000 positions in nationally economy constitutes a "significant" number of jobs. *See Taskila v. Commissioner of Social Sec.*, 819 F.3d 902, 905 (6th Cir. 2016)("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

In summary, Plaintiff has not met his burden to show that the RFC overstated his physical capabilities. *See Jordan v. Commissioner of Social Sec.*, 548 F.3d 417, 423 (6th

Cir. 2008)("claimant . . . retains the burden of proving her lack of residual functional capacity").

### C.  Plaintiff's Allegations of Limitation (Arguments Three and Four)

In his third argument, Plaintiff takes issue with the ALJ's rejection of his professed degree of limitation, contending that the ALJ erroneously overlooked his ongoing use of pain medication to quell symptoms of degenerative disc disease.   ECF No. 13, PageID.567.  On a related note, he argues fourth that the ALJ erred (1) by noting that he did not comply with treatment recommendation, (2) did not consider the possible reasons that he would have been unable to obtain regular treatment, and (3) failed to acknowledge he actually sought and received treatment on a fairly regular basis.[2] ECF No. 13, PageID.568.

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process. 2016 WL 1119029, at *3 (Mar. 16, 2016).  First, the ALJ determines whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the alleged pain or limitation.   *Id.* at *3.   Here, ALJ Tobin acknowledged that the conditions of degenerative disc disease, cardiomyopathy, obesity,

---

[2]    Plaintiff cites SSR 96-7p in support of his argument that the ALJ discounted his claims based on an erroneous account of his treatment history.   1996 WL 374186 (July 2, 1996).  However, the Ruling was rescinded and replaced by SSR 16-3p on March 28, 2016. 2017 WL 5180304 (October 25, 2017).  In contrast to the rescinded Ruling (SSR 96-7p), the newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." *Id.*; *See* 20 C.F.R. §§ 404.1529, 416.929.

glaucoma, chronic pain syndrome and osteoarthritis were not only medically determinable impairments, but caused some degree of work-related limitation (Tr. 25).

Second, the ALJ must evaluate claims of limitation not reflected in the objective evidence. 16-3p at *3-4.  The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.[3]  In other words, whether the record as a whole reflects the claimant's professed degree of limitation.

As to Plaintiff's third argument regarding his ongoing efforts at pain relief due to degenerative disc disease, the ALJ acknowledged that in March, 2016, Dr. Reina prescribed Neurontin 800 and Norco in response to Plaintiff's report of cervical and lumbar spine pain and upper extremity numbness (Tr. 28).  However, she noted that as of the beginning of the following month, Plaintiff reported that his symptoms were

---

[3]

     In addition to an analysis of the medical evidence, 20 C.F.R. §§ 404.1529(c)(3), 416.929 list the factors to be considered in making a credibility determination:

     (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms. ]

controlled (Tr. 28).   The ALJ noted that the same month, an MRI showed evidence of degenerative disc disease but no abnormal spinal cord signal intensity (Tr. 28).   She cited Dr. Reina's July, 2016 finding that the condition of chronic pain syndrome was stable (Tr. 28).   In regard to Plaintiff's ability to perform a limited range of full-time, exertionally light work, the ALJ cited Dr. Pasia's March, 2018 finding of full strength in all extremities and no tenderness of either the cervical or lumbar spine (Tr. 29).   She noted that Dr. Pasia's recent findings were consistent with Dr. Gray's July, 2017 finding that Plaintiff was capable of exertionally light work (Tr. 30).   Finally, the ALJ permissibly observed that while Plaintiff alleged disability as of February 15, 2015, he worked only sporadically from 2008 forward, noting that his "purported inability to work is not necessarily due to his impairments" (Tr. 30).   *See Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994)(work history relevant in assessing the subjective claims).    The ALJ's discussion and conclusions regarding the subjective allegations of degenerative disc disease do not provide grounds for remand.

In his fourth argument, Plaintiff disputes the ALJ's statement that on October 21, 2017, he "was supposed to follow up with his cardiologist for symptoms but did not" (Tr. 29).   ECF No. 13, PageID.568.   He contends that the ALJ did not consider his possible reasons for failing to follow through with treatment and that in actuality, he received consistent treatment for the cardiac condition between 2014 and March, 2018.

Under SSR 16-7p, "if the individual fails to follow prescribed treatment that might improve symptoms," the ALJ "may find the alleged intensity and persistence of an

individual's symptoms are inconsistent with the overall evidence of record." *Id.* at *9. However, the ALJ is required to consider the "possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.*

The ALJ's statement does not constitute error, much less grounds for remand.  She accurately paraphrased Dr. Bezo's October 21, 2017 comment that Plaintiff "was supposed to follow-up with cardiologist for symptoms but didn't" (Tr. 283).  Further, neither Dr. Bezo's treating notes nor any of the medical evidence suggests that Plaintiff's ability to obtain consistent medical treatment was compromised by financial or transportation problems.  While Plaintiff reported significant financial limitations, the record shows that he was able to obtain appropriate treatment (stress tests, echocardiograms, MRIs, x-rays, pain and cardiac medication) as necessary.  Plaintiff testified that he did not experience problems driving (Tr. 45).  Thus, the ALJ's possible inference that Plaintiff's failure to followup with a cardiologist was due to lack of diligence or serious symptomology (rather than the inability to obtain treatment) is not improper.

Plaintiff's claim that the ALJ failed to acknowledge that he received long-term and consistent treatment for the cardiac condition is contradicted by the ALJ's discussion of his long-term treatment and acknowledgment that the condition caused some degree of work-related limitation (Tr. 28-29).  To be sure, Plaintiff is correct that he was seen by a cardiologist just one week after Dr. Beso made his comment (Tr. 28, 387).  However, his subsequent examination by a cardiologist does not contradict Dr. Beso's finding that as of

the week before, he had failed to obtain followup treatment by a cardiologist. Further, the October, 2017 cardiologist's records (showing that Plaintiff did not experience edema, dizziness, or chest discomfort) do not support Plaintiff's claim of a disabling cardiac condition or contradict the ALJ's finding that he could perform a limited range of light work (Tr. 387). Notably, the ALJ observed that the March, 2018, treating records showed that Plaintiff's edema had resolved, he experienced "rare" heart palpitations, and denied dizziness or other symptoms of valvular heart disease (Tr. 28, 384). As such, neither the ALJ's comment that Plaintiff had failed to follow through with recommended treatment as of Dr. Beso's October, 2017 examination, nor her summary of the cardiac treatment constitutes error. Because the ALJ's analysis of the subjective claims is supported the record as a whole, remand is not warranted. *See Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007)(*citing Walters v. Commission of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997))(ALJ's findings regarding the allegations of limitation  entitled to "great weight").

Because the determination that Plaintiff was not disabled is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #19] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec. of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec. of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE


Dated: December 30, 2019

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on December 30, 2019, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen
